UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL VOLTZ                                             PLAINTIFF

V.                      CIVIL ACTION NO. 3:24-CV-650-KHJ-MTP

CITY OF JACKSON, MISSISSIPPI                    DEFENDANT

ORDER

Before the Court is Defendant City of Jackson's ("the City") [31] Motion for Summary Judgment. For the reasons below, the Court denies the [31] Motion.

I.     Background

Michael Voltz ("Voltz") claims the City failed to promote him to Recreation Manager because of his race and age. *See generally* Compl. [1]. Voltz is a white male in his late 40s. Voltz Dep. [31-1] 62:9–62:14; 66:23–67:2. The City hired him as Golf Course Superintendent in 2018. Voltz Aff. [37-1] ¶ 2. In that role, Voltz reported to the Recreation Manager. [31-1] at 13:19–13:22. For most of Voltz's tenure, the Recreation Manager was Steve Hutton ("Hutton"). *Id.* at 13:23–15:3; Harris Dep. [31-3] at 35:22–35:24.

Hutton resigned in July 2021. [31-1] at 15:4–15:10; [37-1] ¶ 3. Soon after, Hutton texted Voltz, "We will get everything set up for you." [37-1] ¶ 4. Voltz understood this to mean he would perform the Recreation Manager duties on an interim basis. *Id.* Voltz soon assumed the responsibilities of the Recreation Manager while continuing his role as the Golf Course Superintendent. *Id.* The City's Director

of Parks and Recreation—Ison Harris ("Harris")—instructed Voltz to attend bi-weekly managerial meetings and conduct performance reviews of all golf course staff. *Id.* ¶¶ 5, 8. Voltz says these tasks confirmed his status as the interim Recreation Manager. *Id.*

A few months later, the City posted the Recreation Manager position on its website. [37-1] ¶ 9; Website Post [37-3] at 2; Job Listings [37-4] at 1 (posting date of September 17, 2021). Voltz submitted his application that same day. Confirmation Email [37-5] at 1. Voltz also notified Director Harris of his application by text. [37-1] ¶ 9; [31-1] at 27:16–28:3. A few months later, the City told Voltz he had to re-apply for the Recreation Manager position because the pay rate changed from $26.57 to $22.00 per hour. *Id.* at 32:19–33:17. In her deposition, the City's HR Director said there was no record of Voltz applying for the position. Martin Dep. [31-5] at 6:15–6:17; 7:14–7:21. And the City told the EEOC the same thing. EEOC Position Statement [37-7] at 5, 15. But the record shows that the City posted the position on September 17, 2021, and Voltz applied the same day. [37-4] at 1; [37-5] at 1; *see also* [37-1] ¶¶ 67, 75–77.

Voltz did not interview for the Recreation Manager position until August 16, 2022—almost a year after the position was posted. [37-1] ¶¶ 34–35. The City's HR Department certified two candidates for interviews: Voltz and Carey Ray, a black male in his mid-20s. Certification List [31-8]. A three-member panel interviewed both candidates. [31-3] at 10:11–19. The panel consisted of Director Harris, Deputy Director Abram Muhammad, and HR Director Toya Martin. *Id.* Each panelist

2

completed interview evaluation forms, and Ray received higher scores than Voltz. [31-3] at 13:11–15:19; see [31-9].

Director Harris selected Ray for the position. In his deposition, Harris testified that he based his decision on Ray's strong interview performance, bachelor's degree, and relevant experience. [31-3] at 16:5–19:22. Ray holds a Bachelor of Business Administration in Marketing with a concentration in PGA Golf Management from Mississippi State University. Ray Resume [31-7] at 11. He served as head golf professional at VinnyLinks Golf Course in Nashville and as Program Director for First Tee of Central Mississippi, a youth development organization focused on golf. *Id.* Ray is also a Class A PGA teaching professional. *Id.*; Ray Dep. [31-2] at 8:21–9:6.

Voltz does not have a college degree or a PGA teaching license. [31-1] at 51:3–51:7. That said, Voltz completed online courses in subjects such as Pesticides in Horticulture, Tools and Equipment, and Turf Irrigation Systems. *Id.* He is not a member of any golf-related professional organizations. [31-1] at 59:1–24. But he has "worked in [the golf] business for over 30 years" and had a full year of experience as the interim Recreation Manager. *Id.* 61:2–3; [31-3] at 25:21–23.

After the City hired Ray, Voltz exhausted his administrative remedies then sued the City for race and age discrimination. *See generally* [1]; Right to Sue Letter [1-2]. The parties engaged in discovery, and the City now moves for summary judgment. Def.'s Mot. Summ. J. [31].

II.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation modified).

A movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (citation modified). "If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (citation modified). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* The non-movant's failure "to offer proof concerning an essential element of [his] case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

4

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified). "The sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (citation modified). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation will not survive summary judgment." *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (citation modified).

III. Analysis

The City insists that summary judgment is warranted because it hired Ray for his "qualifications and not because of race or age," and Voltz failed to present evidence to show that this reason was a pretext. Def.'s Mem. in Supp. [32] at 4; Def.'s Reply [40] at 1–2. The Court disagrees and therefore denies the City's [31] Motion.

Voltz brings claims for race discrimination under Title VII and age discrimination under the Age Discrimination in Employment Act ("ADEA").[1] The

---

[1] Voltz also brings claims under Section 1981 and Section 1983. The Court's analysis below is enough to address Voltz's other claims "[b]ecause claims brought pursuant to Title VII and [Section] 1981 are governed by the same evidentiary framework . . . [and] the analyses under both statutes are substantively the same." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 506 (5th Cir. 2024). Moreover, Section 1983 and Title VII are "parallel

5

ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). And Title VII makes it unlawful for an employer to discriminate against an employee on the basis of, among other things, his race. 42 U.S.C. § 2000e-2(a)(1). The Court analyzes these claims together.

Because Voltz offers no direct evidence of discrimination, he must proceed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 n.2 (5th Cir. 2002) ("This circuit applies the *McDonnell Douglas* rubric to both Title VII and ADEA claims."). The Supreme Court has "assum[ed] without deciding that the *McDonnell Douglas* framework applies at the summary-judgment stage of litigation." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 n.2 (2025). This Court will do the same.

*McDonnell Douglas* is a three-step dance. First, Voltz "must carry the initial burden of establishing a *prima facie* case of discrimination." *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999). Second, if Voltz makes a prima facie showing of discrimination, "the burden shifts to [the City] to provide a legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation modified). Third, if the City articulates a legitimate reason for choosing Ray over Voltz, Voltz must demonstrate "that the

---

causes of action." *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996).

6

proffered reason is pretextual." See *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

Voltz clears the step-one prima facie threshold for both his Title VII and ADEA claims.

To plead a prima facie case for failure to promote under Title VII, Voltz must plausibly allege:

> (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013).

Voltz suffered an adverse action when the City failed to promote him in September 2021 and again when the City selected Ray for Recreation Manager rather than promoting Voltz. *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013) ("Failure to promote is clearly an adverse employment action."). Voltz was qualified for the position. [31-3] at 11:11–13:23; [40] at 2 ("The City has never contended that [Voltz] was unqualified for the Recreation Manager position"). And Voltz falls within the protected class and identifies a comparator. *Ames*, 605 U.S. at 309 ("Title VII's disparate-treatment provision draws no distinctions between majority-group plaintiffs and minority-group plaintiffs."). Lastly, Voltz establishes that the City gave the promotion to someone outside of his protected class—Ray.

As for Voltz's ADEA claim, he must show "(1) [he is] within the protected class; (2) [he is] qualified for the position; (3) [he] suffered an adverse employment

7

decision; and (4) [he was] replaced by someone younger or treated less favorably than similarly situated younger employees . . . ." *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). For the reasons above, the Court finds that Voltz meets elements two and three of his ADEA claim. For element one, Voltz is over 40 years old and within a protected age class. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (citing 29 U.S.C. § 631(a)). For element four, the City gave the promotion to Ray, who is younger than Voltz. Voltz has therefore established a prima facie case of age discrimination.

With step one complete, the burden now shifts to the City to demonstrate a legitimate, nondiscriminatory reason for selecting Ray instead of Voltz. Director Harris testified that Ray was selected for three reasons: (1) strong interview performance, (2) academic credentials, and (3) relevant experience. [31-3] at 16:19–20; 17:2–21; 18:8–16. At this stage, the City need not persuade the Court that its reasons for selecting Ray over Voltz are true. *See, e.g.*, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). The City need only produce sufficient evidence that would convince a reasonable fact finder that it is true. *Id.* And it has done so. [31-2] at 8:21–9:6; [31-4] at 11:6–11:17; [31-7] at 11.

The [31] Motion therefore turns on step three of *McDonnell Douglas*: whether the City's reasons were pretextual. And here, the Title VII analysis differs slightly from the ADEA analysis. While under Title VII Voltz may show that the City's "reason, while true, was only one reason for its conduct and discrimination is another motivating factor," the ADEA requires him to "prove that age was the 'but

8

for' cause of the challenged adverse employment action." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440–41 (5th Cir. 2012); *see also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015).

But at the summary judgment stage, Voltz must only raise a genuine issue of material fact related to pretext. And "[p]retext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020). Voltz may show that the City's reasons are pretextual by demonstrating that: "(1) a discriminatory reason more likely motivated the employer; (2) the employer's reason is unworthy of credence; or (3) he is clearly better qualified than the person selected for the position*." McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (5th Cir. 2019) (citation modified). Voltz carried his burden. So the Court concludes that a genuine dispute of material fact exists as to whether the City's stated reasons are pretextual.

To begin, the City's shifting explanation about Voltz's application supports pretext. The City told the EEOC that Voltz was not hired because he never applied for the position. [37-7] at 5, 15. The City's HR Director testified the same: no record of any application. [31-5] at 6:15–17; 7:14–21. But the record shows otherwise. The position was posted on September 17, 2021. [37-4] at 1. Voltz applied the same day and notified Director Harris by text. [37-5] at 1; [37-1] ¶ 9; [31-1] at 27:16–28:3. A jury could infer that the City's misstatement—repeated under oath and to a federal

9

agency—reflects a broader effort to obscure the real reasons for its hiring decision in September 2021.

As for selecting Ray over Voltz in August 2022, a jury could question the City's "experience" rationale. The City says it hired Ray for his experience. But Voltz was already doing the job. And Director Harris testified that Voltz "basically grew this golf course" and "worked from sunup to sundown trying to figure out how to get this golf course together." [31-3] at 27:15–16; 28:3–5. Deputy Director Muhammad testified that Voltz's golf course experience "was where it was needed to be in terms of what the position called for." [31-4] at 21:10–13. Director Harris himself said he created the Recreation Manager position "in order to get someone with a lot of experience." [31-3] at 35:2–11. A jury could find it implausible to reject the interim manager—the person already performing the work and praised by the City's own leadership—in favor of an outsider with no facility experience.

For similar reasons, a jury could doubt the City's "better interview" rationale. The City cites Ray's strong interview as a key reason for hiring him. *Id.* at 17:2–21. But the evaluation forms contain little to no explanations or narrative justifications. [31-9]. And the City's HR Director could not explain why she scored Ray a '5' for experience and Voltz a '4' when Ray had 3 years of experience and Voltz had 30. [31-5] at 19:14–21. Neither could Deputy Director Muhammad. [31-4] at 21:10–18. And, viewing the record in Voltz's favor, the candidates were asked different questions. *See* [31-9] (handwritten notes under different questions for each candidate). Ray was asked about his management skills and goals for the golf course's future. *Id.* at

10

11. Voltz was asked about budget management and how he would respond if he did not get the job. *Id.* at 25. A jury could infer that subjective preferences—rather than job-related performance—drove the outcome.

Finally, a jury could question how the City weighed the two candidates' credentials. The position required two qualifications: a degree and six years of progressively responsible experience (including three supervisory years). *See* [31-10]. Ray had the degree but not the experience. [31-3] at 25:21–23. Voltz had the experience but not the degree. *Id.*; [31-1] at 61:2–3. Again, Director Harris said he created the Recreation Manager position "in order to get someone with a lot of experience." [31-1] at 35:2–11. On that basis, a jury could conclude the City cherry-picked the credential favoring Ray.

Taken together, the record permits a finding of pretext. For that reason, the Court denies the City's [31] Motion.

IV.   Conclusion

For the reasons above, the Court DENIES the [31] Motion. In doing so, the Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 26th day of January, 2026.

s/ <i>Kristi H. Johnson</i><br>UNITED STATES DISTRICT JUDGE

11